IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID H. PEASE, III and <br> LISA PEASE, | : <br> : <br> : | No. 4:10-CV-00843 |
| Plaintiffs, | : <br> : | |
| v. | : <br> : | (Judge McClure) |
| KELLY AEROSPACE, INC. d/b/a <br> KELLY AEROSPACE POWER <br> SYSTEMS, INC., An Alabama <br> Corporation, <u>et</u> <u>al.</u>, | : <br> : <br> : <br> : <br> : | |
| Defendants. | : | |

# MEMORANDUM

June 8, 2010

## I. INTRODUCTION

This action was initiated in 2007, when plaintiffs David H. Pease III and Lisa Pease filed an action against defendants Kelly Aerospace Inc., d/b/a Kelly Aerospace Power Systems, Inc.; Main Turbo Systems, Inc. ("Main Turbo"); Lycoming Engines Inc. ("Lycoming Engines"); and Air Tolin in Ohio state court. On April 20, 2007, the action was transferred to the District Court for the Middle District of Alabama for jurisdictional purposes. (Rec. Doc. No. 1, Attachment No. 1). The lawsuit arises out of an incident that occurred on June 5, 2005, when plaintiff David Pease was injured after his aircraft, a Piper Saratoga, crashed near

Tazewall, Tennessee. Plaintiffs claim that the crash occurred after Mr. Pease's plane "suffered an engine seizure after an apparent oil starvation event at a high altitude . . . ." Id. at 1.

## II. PROCEDURAL HISTORY

Upon a renewed motion to dismiss, filed by defendant Main Turbo on April 18, 2008 (Rec. Doc. No. 4, Attachment No. 3), the District Court for the Middle District of Alabama, Northern Division ("Alabama District Court"), on June 20, 2008, dismissed Main Turbo as a defendant in the instant case (Rec. Doc. No. 5, Attachment No. 1). The Alabama District Court agreed with Main Turbo, concluding that neither specific nor general personal jurisdiction existed over Main Turbo such that jurisdiction in Alabama was appropriate. Id. at 8-20.

On August 17, 2009, the plaintiffs and defendants Kelly Aerospace Inc., d/b/a Kelly Aerospace Power Systems, Inc., filed a stipulation for dismissal with prejudice. (Rec. Doc. No. 7). The stipulation indicated that the parties had "settled and resolved all of the claims and controversies between them pursuant to a Pro Tanto Settlement Agreement dated August 10, 2009 . . . ." Id. By an order dated August 20, 2009, and upon consideration of the parties' stipulation for dismissal with prejudice filed on August 17, 2009, the Alabama District Court directed the clerk to dismiss defendants Kelly Aerospace, Inc., d/b/a Kelly Aerospace Power

Systems, Inc., from the cause of action. (Rec. Doc. No. 7, Attachment No. 2).[1]

On March 16, 2010, plaintiffs filed a motion, and a brief in support, to stay the then-present trial schedule and transfer venue pursuant to 28 U.S.C. § 1404. (Rec. Doc. No. 8, Attachment Nos. 3, 4). Plaintiffs argued that the action should be transferred to the District Court for the Middle District of Pennsylvania in Williamsport, Pennsylvania, based upon the interests of judicial economy and the convenience of the parties and witnesses. Id. Lycoming Engines filed a response opposing the plaintiffs' motion to stay the trial schedule and transfer venue pursuant to 28 U.S.C.§ 1404 on March 29, 2010. (Rec. Doc. No. 9). In support, Lycoming Engines argued that the interests of justice and the convenience of witnesses to be called to testify, as well as ease of access of proof, did not favor transferring the matter to Pennsylvania. Id. at 3-6. Lycoming Engines also argued that the motion was untimely and unduly prejudicial. Id. at 6-8. Plaintiffs filed a reply brief on April 6, 2010. (Rec. Doc. No. 9, Attachment. No. 2). By a Memorandum and Order dated April 19, 2010, the Alabama District Court granted the plaintiffs' motion to transfer venue and transferred the matter to the District Court for the Middle District of Pennsylvania. (Rec. Doc. No. 11, Attachment No. 2).

---

[1] Only Lycoming Engines remains as a defendant in the present action.

The motion presently before this court is a motion to compel the production of documents, pursuant to Federal Rule of Civil Procedure 37.[2] (Rec. Doc. No. 17). The instant motion was filed on April 12, 2010, with a brief in support. (Rec. Doc. Nos. 17 and 18). With this motion, plaintiffs seek "an order compelling Defendant Lycoming Engines to produce highly relevant and material accident documents and materials responsive to Plaintiffs' production request." (Rec. Doc. No. 17 at 1). Lycoming Engines filed a brief in opposition on May 10, 2010. (Rec. Doc. No. 27). Plaintiffs filed a reply brief on May 24, 2010. (Rec Doc. No. 31).

The instant matter is now ripe for disposition. In light of the discussion below, we will grant the plaintiffs' motion to compel. (Rec. Doc. No. 17).

### III. STANDARD OF REVIEW

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets the contours for discovery and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense - including the existence, description, nature, custody, condition, and location of any documents or other tangible things . . . ." The rule further states that "[r]elevant information need

---

[2] According to Fed. R. Civ. P. 37(a)(3)(B), "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection."

not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

It is well-settled that Rule 26 establishes a liberal discovery policy. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U.S. 495, 507-08 (1947); Great West Life Assurance Co. v. Levithan, 152 F.R.D. 494, 497 (E.D. Pa. 1994). As a general rule, therefore, discovery is permitted of any items that are relevant or may lead to the discovery of relevant information. Hicks v. Big Bros./Big Sisters of Am., 168 F.R.D. 528, 529 (E.D. Pa. 1996); Transcontinental Fertilizer Co. v. Samsung Co., 108 F.R.D. 650, 652 (E.D. Pa. 1985). Parties are permitted a significant discovery latitude "in order to ensure that the case proceeds with 'the fullest possible knowledge of the issues and facts before trial.'" Ascenzi v. O'Brien, No. CV-05-1184, 2008 WL 205235, at *5 (M.D. Pa. Jan. 23, 2008) (quoting Hickman v. Taylor, 329 U.S. 495, 501 (1947) (Vanaskie, J.).

When one party refuses to comply with other parties' legitimate discovery requests, the aggrieved party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1); see Fed. R. Civ. P 37(a)(3). The injured party must also certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to

5

obtain it without court action." Fed. R. Civ. P. 37(a)(1).

## IV. DISCUSSION

The instant motion to compel concerns plaintiffs' request that the defendants provide accident documents and other materials relating to particular types of engine-related failures concerning aircraft utilizing a TIO 540 model engine. More specifically, plaintiffs seek a response from Lycoming Engines concerning the first request in their Fourth Request for Production of Documents Propounded Upon Defendant Lycoming Engines. The relevant request reads as follows:

> Please produce any and all Accident, Incident or Mishap Reports authored by Lycoming and/or the NTSB, TSB or any foreign accident investigation authority, in Lycoming's possession and which relate to any oil starvation, engine failure or significant oil loss in any aircraft with any TIO 540 model engine, including all those listed on the E14EA Type Certificate with an exception for those designated with the prefix LTIO.

Id., Exhibit A. Lycoming Engines objected to the above request on March 18, 2010, and stated the following:

> Lycoming Engines objects to this Request as it is overly broad, unduly burdensome, encyclopedic in nature, and global in scope. Further, the requests [sic], as phrased, does not attempt to limit itself to the model engine involved in the accident made the basis of this suit nor to the accident scenario. Therefore, the Request, as phrased, is not designed to lead to the discovery of admissible evidence, but rather is designed to harass and annoy this Defendant.

Id., Exhibit B.

Plaintiffs make a number of arguments concerning the propriety of their document request. First, plaintiffs claim that the reports requested "are plainly relevant to causation and Lycoming's knowledge of the alleged engine defect at issue in the present case." (Rec. Doc. No. 18 at 4). Plaintiffs argue that similar accidents in the past that relate to oil starvation, significant oil loss, or engine failure are relevant to whether Lycoming Engines was put on notice of a defect. Id. More specifically, plaintiffs note that Type Certificate E14EA contains thirty-eight additional engine types that fall within the Lycoming TIO 540 engine series. Plaintiffs contend that each of these engine types "is a 540 cubic inch displacement, horizontally opposed six cylinder, direct drive, fuel injected and turbo charged engine" designed to be used "in general aviation aircraft."[3] Id. at 4-5. In addition, plaintiffs point to deposition testimony by a number of Lycoming Engines employees relating to 540 series engines that experienced oil starvation and accidents related to engine failure. Id. at 5-6. Plaintiffs claim that the above-referenced similarities "are so profound, that the engines are nearly identical" and,

---

[3] Plaintiffs also note that all TIO 540 engines "fall within a very narrow range of weight and size," "are turbo charged and have a turbo charger bracketed to the engine case," "have oil return lines which return oil from the 'wet-side' of the turbo charger to the engine case," have oil return lines that "have fasteners and attachment devices that secure the hoses at the turbo charger end and at the engine case end," and "undergo a single 150 hour endurance test to determine operational issues with the model at the time of certification." (Id. at 6, n.2).

"[i]f engine or mechanical failure or problems arise in one particular model, it is likely to occur in another model." Id. Finally, plaintiffs contend that their request is neither unduly burdensome nor overly broad. Id. at 6-8.

Lycoming Engines filed a brief in opposition to the plaintiffs' motion to compel on May 10, 2010. (Rec. Doc. No. 27). Lycoming Engines rests its opposition on three main areas. First, Lycoming Engines notes that the cantilever design used to attach the turbocharger to the engine in the TIO-540-AHIA engine in the Saratoga formed the basis for the plaintiffs' claim against Lycoming Engines. (Id. at 5-13). Therefore, so the defendant's argument goes, the instant document request is overly broad. As support, Lycoming Engines points to plaintiffs' complaint, which lays out the theory of liability against Lycoming Engines as follows:

> At all time [sic] on or before June 5, 2005, . . . Lycoming Engines[] owed a duty to Plaintiffs to exercise judgment, care, skill and the knowledge of a reasonably prudent professional aircraft engine manufacturer when designing and manufacturing the Lycoming TIO-540 engine when it permitted the design manufacture and installation of the Kelly Turbocharger Model TA0413IBP and its turbo oil drain tank on its engine by a cantilever method which Lycoming knew or should have known would expose the engine and the turbocharger to unusual and destructive vibration resulting in oil starvation and the destruction of the engine when in flight.

(Rec. Doc. No. 27, Attachment No. 1 at 8). Plaintiffs also include a claim against

Lycoming Engines based upon a theory of product liability, stating, in part:

> Lycoming Engines knew or should have known that the cantilever design of the Garrett Turbocharger, its turbo oil drain tank and the TIO-540 engine could lead to unusual and destructive vibrations which would separate the oil drain tank from the turbocharger assembly, compromise the clearance of rotating compressor parts and result in the destruction of the engine and turbocharger assembly releasing oil from the engine and leading to the seizure and stoppage of the engine and subsequent crash. This circumstance, including the design and manufacture of the engine and turbocharger assembly was dangerous and defective for its intended purpose of operation as an aircraft engine and created a substantial risk of severe injury and harm to operators of the aircraft . . . .

Id. at 10. Lycoming Engines emphasizes that the plaintiffs' claims for negligence and product liability rest solely upon this cantilever method for attaching the turbocharger's oil drain tank to the TIO-540-AHIA engine in the Saratoga.[4] Id. at 2-3. Defendant notes, however, that "[n]one of the other engines for which Plaintiffs are requesting information *incorporates a turbocharger mounted by cantilever design*, and most are at variance with the TIO-540-AHIA in that they include different model turbochargers, incorporate counter-clockwise rotation, are

---

[4] In their complaint, plaintiffs similarly allege that "Lycoming Engines knew that the cantilever design of the turbo oil drain tank assembly on the Garrett Turbocharger as incorporated in the Lycoming TIO-540 engine was a dangerous and defective design making the engine unsuitable for its intended purpose and creating a risk of unreasonable harm to owners and operators of aircraft utilizing the engine and turbocharger assembly . . . ." (Rec. Doc. No. 27, Attachment No. 1 at 10).

9

of different weights, as well as multiple other differences . . . ." Id. at 4 (emphasis added).

Second, Lycoming Engines argues that it already has sufficiently responded to plaintiffs' discovery requests. Id. at 13. Lycoming Engines notes that it has produced accident reports that relate to the TIO-540-AH1A engine, the only model that utilizes the cantilever design described above. Id. The defendant claims that, by producing such documents, it has discharged its discovery obligations under the Federal Rules of Civil Procedure.

Finally, Lycoming Engines contends that producing the documents requested would be unduly burdensome, even considering plaintiffs' counsel's offer to personally review the documents. Id. at 13-15. Lycoming Engines claims that a review and search would take weeks and that, as accident reports are not categorized by cause of accident or engine type, the defendant will have to individually review each report to determine whether it is subject to production. Id. at 13-14. The defendant notes that, even after an exhaustive review and search of documents stored in both electronic and hard copy format, it will have to determine whether accidents involving the proper turbocharged engine occurred as a result of "oil starvation, engine failure or significant oil loss." In addition, the defendant claims that, "[b]ecause the reports do not contain information regarding

causative findings, it would not necessarily be obvious that each accident involved oil starvation or the reason(s) therefor." Id. at 15.

In their brief filed as a reply to the defendant's brief in opposition, plaintiffs dispute that the documents are not relevant; in fact, plaintiffs claim that, "[a]t trial, proof that Lycoming was knowledgeable of oil starvation events prior to the instant occurrence will show that accident was foreseeable and could have been prevented." (Rec. Doc. No. 31 at 2). Plaintiffs also note that none of the TIO-540 engines underwent vibration testing, a process that can uncover occurrences of oil starvation. Id. at 3. Plaintiffs also dispute the defendant's recitation of their theory of defect, noting that their complaint against the defendant is one sounding in negligence and products liability and that, pursuant to the Federal Rules of Civil Procedure, they "may obtain discovery regarding any nonprivileged matter that is relevant to" their "claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiffs also claim that the TIO series engines are marketed by the defendant as being substantially similar and that Lycoming Engines has also made such representations to the federal government. (Rec. Doc. No. 31 at 5-7; see also 14 C.F.R. § 21.19).

We are constrained to agree with the plaintiffs that defendant Lycoming Engines should be compelled to produce the requested documents. As an initial

point, plaintiffs have two remaining claims against Lycoming Engines, one sounding in negligence and one sounding in product liability.  "[T]here is support for the proposition that a plaintiff who raises a design defect claim is entitled to broader discovery than, for example, if the claim were solely one of negligent manufacture."  Fine v. Facet Aerospace Products Co., 133 F.R.D. 439 (S.D.N.Y. 1990) (citing Murphy v. Nissan Motor Corp., 650 F. Supp. 922, 925-29 (E.D.N.Y. 1987)).  The fact that plaintiffs also have a claim resting upon a theory of product liability therefore supports a reading allowing a broader degree of discovery.

Second, we do not find as persuasive the defendant's description of the plaintiffs' complaint as necessarily being one *solely* founded upon the cantilever design of the Garrett turbocharger.  After all, in paragraph thirty-two of their complaint, the plaintiffs claim "that the cantilever design of the Garrett Turbocharger, its turbo oil drain tank and the TIO-540 engine could lead to unusual and destructive vibrations which would separate the oil drain tank from the turbocharger assembly . . . ."  (Rec. Doc. No. 27, Attachment 1 at 10).  The plaintiffs then claim that such separation could destroy the engine and turbocharger assembly, an event that would cause the engine to lose oil, seize up and stop.  Id.  "This circumstance," the plaintiffs claim, "*including the design and manufacture of the engine and turbo charger assembly* was dangerous and defective for its

12

intended purpose of operation as an aircraft engine . . . ." Id. (emphasis added).

We read the above as alleging that the cantilever design, *in conjunction with* the oil drain tank and the TIO-540 engine, could lead to a separation of the oil drain tank from the turbocharger assembly, an occurrence that could lead to the loss of oil and stoppage of the engine. In this way, the turbo oil drain tank and the TIO-540 engine are directly relevant to what the plaintiffs contend was a crash caused by oil starvation and a subsequent stoppage of the engine. The incident, mishap, and accident reports sought by plaintiffs in the instant request pertain to six cylinder engines with a 540 cubic inch displacement, and that are horizontally-opposed, fuel-injected, direct driver, and turbocharged. In addition, the engines, though not of identical weights and sizes, are similar in those respects. These engines also have tubochargers that are bracketed to the engine case, though not in a cantilever design as found in the TIO-540-AH1A engine. We believe that the above characteristics are sufficiently similar, in light of the plaintiffs' claims, to warrant our granting the plaintiffs' motion to compel. We believe the information sought by the plaintiffs in the instant motion to compel is, in the language of Fed. R. Civ. P. 26(b)(1), relevant and "reasonably calculated to lead to the discovery of admissible evidence." After all, the information sought may provide plaintiffs with an idea as to what the defendant knew and when the defendant knew it, or notice as

13

to the potential dangers associated with the 540 series engine and the interaction between this engine and a turbocharger. Though the reports sought in the instant request do not pertain to a turbocharger attached to the engine in a cantilever design, these reports may shed light on the risk of oil starvation or engine failure in the TIO-540 series depending on how the engine and the turbocharger are connected and how the oil drain tank could be most safely utilized. At bottom, we do not believe that the above language necessarily precludes plaintiffs from seeking discoverable material from the defendants that relate to substantially similar engines within the TIO-540 class, even if such engines did not utilize the cantilever design found in the TIO-540-AH1A engine.

In addition, as the plaintiffs seek mishap and accident reports involving TIO-540 model engines and only where oil starvation, engine failure, or significant oil loss relate to the mishap or accident report, we do not believe the discovery request is overly broad.

Similarly, while it may take Lycoming Engines several weeks to produce the pertinent documents, we do not believe that the instant request is unduly burdensome. The request does encompass thirty-nine models, as listed on the TIO-540 series Type Certificate, which were offered by Lycoming Engines over the course of more than forty years. However, the request is, again, limited to

accidents relating "to any oil starvation, engine failure or significant oil loss in any aircraft . . . ." (Rec. Doc. No. 18, Exhibit A at 3). In addition, not just any accident, incident, or mishap report must be produced; instead, only those reports "authored by Lycoming and/or the NTSB, TSB or any foreign accident investigation authority, *in Lycoming's possession*" need be provided. Id. at Exhibit A (emphasis added). Therefore, while it will take time for Lycoming Engines to produce the relevant documentation, we do not believe the request imposes an undue burden on the defendant.

Finally, we note that our granting of the plaintiffs' instant motion to compel in no way evinces our belief as to whether any documents produced pursuant to this Memorandum and Order would be admissible at any future trial. Quite simply, we conclude that, at the present time, we believe it would be inappropriate to foreclose from plaintiffs the opportunity to obtain nonprivileged evidence that, we believe, "is relevant to [the plaintiffs'] *claim* . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added). Similarly, we believe "the discovery appears reasonably calculated to lead to the discovery of admissible evidence" and is not unreasonably cumulative, duplicative, unduly burdensome, or overly broad. Id.

In light of the above, we will grant the plaintiffs' motion to compel discovery. (Rec. Doc. No. 17).

## V.  CONCLUSION

Based on the above reasoning, we will grant the plaintiffs' motion to compel discovery (Rec. Doc. No. 17).  Therefore, we will order Lycoming Engines to respond to the first request in plaintiffs' Fourth Request for Production of Documents Propounded Upon Defendant Lycoming Engines.  (Rec. Doc. No. 18, Exhibit A).

s/James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID H. PEASE, III and<br>LISA PEASE,<br><br>    Plaintiffs,<br><br>v.<br><br>KELLY AEROSPACE, INC. d/b/a<br>KELLY AEROSPACE POWER<br>SYSTEMS, INC., An Alabama<br>Corporation, et al.,<br><br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 4:10-CV-00843<br><br><br><br><br>(Judge McClure) |

**ORDER**

June 8, 2010

For the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' "Motion to Compel the Production of Documents" (Rec. Doc. No. 17) is **GRANTED**.

2. Defendant Lycoming Engines is directed to respond to the first request contained in the Plaintiffs' Fourth Request for Production of Documents

17

Propounded Upon Defendant Lycoming Engines (Rec. Doc. No. 18, Exhibit A), within thirty (30) days from the date of this order.

                                                                           <u>s/James F. McClure, Jr.</u>
                                                                           James F. McClure, Jr.
                                                                           United States District Judge