## IN THE UNITED STATE S DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID H. PEASE, III and LISA PEASE, | : | CIVIL ACTION NO. 4:10-CV-00843 |
| | : | |
| | : | (Judge Conner) |
| **Plaintiffs** | : | |
| | : | |
| v. | : | |
| | : | |
| LYCOMING ENGINES, | : | |
| | : | |
| **Defendant** | : | |

### MEMORANDUM

Plaintiffs David H. Pease III ("Mr. Pease") and Lisa Pease ("Mrs. Pease") (collectively, "plaintiffs") bring this diversity action against defendant Lycoming Engines Inc. ("Lycoming Engines").  Presently before the court is a motion (Doc. 47) to dismiss or strike plaintiffs' claims in the amended complaint, filed by Lycoming Engines.

### I.    Background

An aviation accident, which occurred on June 5, 2005, gave rise to the instant lawsuit.  A Piper/PA-32R -301T aircraft, piloted by Mr. Pease, crashed near Tazewall, Tennessee, injuring Mr. Pease.  Plaintiffs allege that the crash occurred after Mr. Pease's plane "experienced a catastrophic engine failure, due to engine oil starvation and the failure of critical internal engine parts."  (Doc. 43 at 4).  The engine in Mr. Pease's Piper aircraft, a TIO-540-AH1A engine ("AH1A"), was

manufactured and designed by Lycoming Engines,[1] a Pennsylvania corporation

with its principal place of business in Lycoming County, Pennsylvania.  (Id. at 1-2).

### A.  Plaintiffs' Claims[2]

Plaintiffs list six counts in their first amended complaint.  These counts are

as follows: violation of Civil Air Regulation ("CAR") Part 13, et seq., Aircraft Engine

Airworthiness (Count I); violation of Federal Aviation Regulation ("FAR") §§ 21.3

and 145.21 (Count II); violation of FAR §§ 33 et seq. (Count III); reckless and

careless conduct (Count IV); Punitive Conduct (Count V);[3] and Loss of Consortium

---

[1] On December 6, 1964, under the Civil Aeronautics Act of 1938, Lycoming Engines was issued Type Certificate Number E14EA by the Federal Aviation Administration ("FAA") for Engine Model TIO 540 A1A ("A1A").  (Id. at 3).  The engine at issue in the present case, model TIO 540 AH1A, was added to Type Certificate E14EA on June 25, 1997.  (Id.)  Twenty-nine engines have been added to this type certificate since Lycoming Engines received Type Certificate Number E14EA for the A1A engine model.  (Id.)

[2] To the extent that Lycoming Engines seeks a dismissal of plaintiffs' claims, and in accordance with the standard of review for a motion to dismiss under Rule 12(b)(6), the court will present the facts as alleged in the complaint. See infra Part V.B.  However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action will be disregarded.  Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); Santiago v. Warminster Twp., 629 F.3d 121, 131-32 (3d Cir. 2010).

[3] This court has determined that Tennessee law applies to the instant litigation.  (See Doc. 107).  The parties agree that, under Tennessee law, a punitive damages claim such as that alleged by plaintiffs cannot stand on its own.  See Hutchinson v. Pyburn, 567 S.W.2d 762 (Tenn. App. 1977)  The court will, therefore, dismiss this claim as an independent cause of action, and convert it to a general request for punitive damages.

by Mrs. Pease (Count VI).[4]

In Count I of the first amended complaint, plaintiffs allege violations of multiple sections of CAR Part 13. First, plaintiffs allege that Lycoming Engines violated CAR Part 13.200(a)[5] and CAR Part 13.201.[6] (Id. at 5-6). Plaintiffs allege that Lycoming Engines violated the standard of care contained in Part 13.200(a) when:

> Despite knowledge that common design of the drip tube, oil drain tank and turbocharger attachment flange fractures [sic] and parts of the cantilevered design make performance of basic component parts "hazardous and unreliable," Lycoming negligently, carelessly and recklessly manufactured and maintained the similar design of the base model of the TIO 540 series engines in its subsequent engines including the TIO-540 AH1A.

(Id. at 6). As for Part 13.201, plaintiffs allege that parts of the AH1A engine were neither suitable nor durable in conformity with the meaning of the regulation, that some designs and fabrication were never tested individually prior to certification, and that these deficiencies "led to the publication of the Extron/Lycoming Mandatory Service Bulletin 534 on March 24, 1999 . . . ." (Id. at 6-7). This bulletin required "examinations of the analogous TIO 540 model turbo drip tube with a weld at the 90 (degree) elbow." (Id. at 7). Plaintiffs claim that a similar tube connecting

---

[4] Mrs. Pease's loss of consortium claim is derivative in nature; it relates to alleged violations of federal standards of care, for which plaintiffs have properly stated a claim. Therefore, the court will not dismiss the loss of consortium claim.

[5] CAR Part 13.200(a) provides that "[t]he engine shall not incorporate design features or details which experience has shown to be hazardous or unreliable. The suitability of all questionable design details or parts shall be established by tests."

[6] CAR Part 13.201 states that "[t]he suitability and durability of all materials used in engines shall be established on a basis of experience or tests."

the oil drip tank and turbocharger in the AH1A model engine was not properly

tested in accordance with the two above regulations for parts durability or

suitability.  (Id.)  Had testing and design in accordance with Part 13.201 been

accomplished, plaintiffs allege that Lycoming Engines would have detected

problems with part suitability and durability before the occurrence of "in-service

failures."  (Id.)

Plaintiffs also allege violations of CAR Part 13.103[7] and 13.100(a), which

require that a manufacturer such as Lycoming Engines validate through testing

that engine parts and accessories are not susceptible to undue vibration.  (Id. at 7-

8).  Plaintiffs contend that Lycoming Engines did not conduct vibration testing on

the AH1A engine, and that by failing to conduct such testing, the company violated

its duty of care as established in Parts 13.103 and 13.100(a).  (Id. at 8).  Plaintiffs also

claim that Lycoming Engines violated CAR Part 13.151, which requires that a

vibration survey be conducted in order "to investigate the vibration characteristics

of the engine over the operational range of rotational speed and engine power."

(Id.)  Plaintiffs claim that Lycoming Engines' certification through prior testing on a

---

[7] According to Part 13.103, "The engine shall be designed and constructed to
function throughout its normal operating range of rotational speeds and engine
powers without inducing excessive stress in any of the engine parts because of
vibration and without imparting excessive vibration forces to the aircraft
structure."

4

related engine model, such as the A1A engine, was inadequate for purposes of Part 13.151 and violated the federally-imposed standard of care.  (Id. at 8-9).[8]

In Count II of the first amended complaint, plaintiffs allege that Lycoming Engines violated FAR §§ 21.3 and 145.21.  (Id. at 10-13).  According to FAR Part 21.3, and except as provided in Part 21.3(d), a holder of a type certificate is, *inter alia*, required to "report any failure, malfunction or defect in any product, part, process or article manufactured by it that it determines has resulted in any of the occurrences listed in paragraph (c) of this section," such as an engine failure.  (Id. at 10-11).  Plaintiffs claim that Lycoming Engines knew of particular failures regarding malfunctions and defects in the TIO model series engines and failed to report these under FAR § 21.3(d).[9]  (Id. at 11).  Hence, the FAA was unable to take appropriate action to correct these failures, malfunctions, and defects; and therefore, according to plaintiffs, Mr. Pease suffered injuries in the June 5, 2005 aviation accident.

---

[8] Plaintiffs claim that no vibration testing had been performed on the engine model at issue, the AH1A, or any other TIO 540 model that had been certified in the twenty years before certification of the AH1A.  (Id. at 9).  Plaintiffs claim that this fact is also a violation of Parts 13.103 and 13.151.  (Id.)

[9] Plaintiffs contend that Lycoming Engines violated FAR § 145.2219(a) in a similar fashion.  Section 145.2219(a) states that "[a] certified repair station must report to the FAA within 96 hours after it discovers any serious failure, malfunction, or defect of an article.  The report must be in a format acceptable to the FAA."  (Id. at 11-12).  Plaintiffs contend that, as a certified repair station, Lycoming Engines was required to report the alleged failures, malfunctions, and defects with TIO 540 model series engines, including the AH1A engine.  (Id. at 12).

In Count III of their first amended complaint, plaintiffs allege that Lycoming Engines violated FAR §§ 33, *et seq.* (<u>Id.</u> at 13-15). Plaintiffs claim that Lycoming Engines' representation that the AH1A engine was "substantially similar" to the original A1A "does not reflect compliance with the current standards as set forth in FAR Part 33, *et seq.* and ignores current minimum airworthiness safety standards." (<u>Id.</u> at 14). Plaintiffs allege that Lycoming Engines has violated §§ 33.4, 33.19, 33.35, 33.33, 33.43, 33.49, and 33.83 by failing to conduct testing in such areas as airworthiness, vibration, durability, and endurance. (<u>Id.</u> at 14-15). Plaintiffs claim Mr. Pease suffered injury as a result of such failure. (<u>Id.</u> at 15).

In Count IV of the first amended complaint, plaintiffs claim that Lycoming Engines' violation of the above CARs and FARs "was careless, reckless and it was done in complete disregard for the lives of pilots, including David Pease." (<u>Id.</u> at 15-16). Plaintiffs claim that Lycoming Engines violated the aviation industry's federal standard of care and breached its "duty owed to the purchasers, owners and operators of aircraft with TIO 540 series engines . . . ." (<u>Id.</u> at 16). Plaintiffs claim that, as a result of these breaches, Mr. Pease suffered injury. (<u>Id.</u> at 16-17). Finally, in Count VI of the first amended complaint, plaintiffs state a claim by Mrs. Pease for loss of consortium.

## B.   <u>Procedural History</u>

On April 20, 2007, plaintiffs filed suit against Lycoming Engines and fourteen other defendants in the United States District Court for the Middle District of Alabama. (Doc. 1-2). On April 19, 2010, the Middle District of Alabama granted

plaintiffs' motion to transfer venue (Doc. 8-4) and transferred the action to this court (<u>see</u> Doc. 11-3).  This matter was reassigned to the undersigned on December 22, 2010.

On December 7, 2010, Lycoming Engines moved for judgment on the pleadings.  (Doc. 41).  Ten days later, the parties stipulated (Doc. 43) that plaintiffs could amend the complaint, provided that the court approved the stipulation, which it did, on December 27, 2010.  (Doc. 44).  On December 29, 2010, plaintiffs filed their first amended complaint against Lycoming Engines.  (Doc. 46).  Two days later, on December 31, 2010, Lycoming Engines moved to strike or, in the alternative, to dismiss plaintiffs' amended complaint, pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure.  (<u>See</u> Doc. 47).  This motion is now ripe for disposition.  For the reasons that follow, the court will deny the motion (Doc. 47).

## III.   <u>Standard of Review</u>

### A.   <u>Motion to Strike</u>

Rule 12 of the Federal Rules of Civil Procedure enumerates various defenses and objections a party may raise in response to a pleading and the manner in which such defenses and objections are to be asserted.  <u>See</u> F<span>ED</span>. R. C<span>IV</span>. P. 12.  Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike "any redundant, immaterial, impertinent, or scandalous matter." F<span>ED</span>. R. C<span>IV</span>. P. 12(f).  District courts have considerable discretion in ruling on a Rule 12(f) motion, and in general, such a motion will be denied unless the allegations have no possible relation to the claims, or will cause substantial prejudice to one of the parties.  <u>See</u> <u>Krisa v.</u>

<u>Equitable Life Assur. Soc.</u>, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000); <u>see also</u> 5C

CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 3d §

1382 (2004) (stating that "there appears to be general judicial agreement, as

reflected in the extensive case law on the subject, that they should be denied unless

the challenged allegations have no possible relation or logical connection to the

subject matter of the controversy and may cause some form of significant prejudice

to one or more of the parties to the action").  Motions to strike are disfavored, and

striking an entire pleading is a drastic remedy that should be used sparingly.  <u>See</u>

<u>Krisa</u>, 109 F. Supp. 2d at 319.

### B. <u>Motion to Dismiss</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief can be granted.

Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief."  <u>Gelman v. State</u>

<u>Farm Mut. Auto. Ins. Co.</u>, 583 F.3d 187, 190 (3d Cir. 2009) (quoting <u>Phillips v. County</u>

<u>of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)); <u>see also</u> <u>Kanter v. Barella</u>, 489 F.3d

170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).

Although the court is generally limited in its review to the facts contained in the

complaint, it "may also consider matters of public record, orders, exhibits attached

to the complaint and items appearing in the record of the case."  <u>Oshiver v. Levin,</u>

Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago, 629 F.3d at 130.  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1947, 173 L. Ed. 2d 868 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. at 1950 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, --- U.S. at ---, 129 S. Ct. at 1949.  When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint.  See Grayson v. Mayview State

Hosp., 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir.

2000).

## III.   **Discussion**

The court will first address the motion to strike pursuant to Federal Rule of

Civil Procedure 12(f).  The court will then address the Rule 12(b)(6) arguments.

### A.   **Motion to Strike**

In the pending motion, Lycoming Engines initially contends that plaintiffs'

first amended complaint goes beyond the stipulation agreed to by the parties and

entered by the court, and that the entire amended complaint should therefore be

stricken.  The court disagrees.

On December 17, 2010, the parties filed a stipulation providing that, upon

approval of the stipulation by the court, Lycoming Engines would petition to

withdrawn its then-pending motion for judgment on the pleadings.  (Doc. 43).

Counsel agreed "that Plaintiffs may file an Amended Complaint on or before

December 29, 2010 . . . ."  (<u>Id.</u> at 2).

Lycoming Engines objects to the fact that plaintiffs' first amended complaint

pleads five new causes of action (Counts I-V), deletes a number of allegations

against prior defendants in the action and claims against Lycoming Engines, and

adds a punitive damages cause of action.  (Doc. 63 at 10-12).  However, the

stipulation contains no limitation on the extent to which plaintiffs were entitled to

amend their complaint.  The parties clearly agreed to the filing of an amended

complaint, with no reservations or conditions.[10]  Therefore, the court will deny the

motion to the extent it seeks to strike plaintiffs' first amended complaint pursuant

to Rule 12(f).

    **B.**    <u>**Motion to Dismiss**</u>

    The law of the Third Circuit is clear: there is no private cause of action under

the Federal Aviation Act or the regulations promulgated under that act.  <u>See</u> <u>Rauch</u>

<u>v. United Instruments, Inc.</u>, 548 F.2d 452, 457 (3d Cir. 1976); <u>see also</u> <u>Wolf v. Trans</u>

<u>World Airlines, Inc.</u>, 544 F.2d 134, 136-138 (3d Cir. 1976) (concluding that no implied

private right of action exists under either § 411 or § 403(b) of the Federal Aviation

Act); <u>Polansky v. Trans World Airlines, Inc.</u>, 523 F.2d 332, 333 (3d Cir. 1975) (holding

that no private cause of action may be implied from § 404 or § 411 of the Federal

Aviation Act).

    This conclusion has been reaffirmed in decisions by the Court of Appeals for

the Third Circuit and followed by district courts within this circuit.  <u>See</u> <u>Abdullah v.</u>

<u>American Airlines, Inc.</u>, 181 F.3d 363, 375 (3d Cir. 1999) ("[T]here is no federal

remedy for personal injury or death caused by the operation or maintenance of

aircraft to be found in the FAA itself."); <u>Sikkelee v. Precision Airmotive Corp.</u>, 731

F. Supp. 2d 429, 438-39 (M.D. Pa. 2010) (Jones, J.) (finding that <u>Abdullah</u> controlled

---

[10] The stipulation contained "whereas" clauses pertaining to other subjects. For instance, one clause indicated that a motion for judgment on the pleadings—wherein Lycoming Engines alleged that it was entitled to judgment for plaintiffs' failure to plead breach of an applicable federal standard of care—was then pending.  Another acknowledged that the case of <u>Abdullah v. American Airlines, Inc.</u>, 181 F.3d 363 (3d Cir. 1999), is the controlling law of the Third Circuit. There were no such clauses concerning the content of the amended complaint.

the action, and dismissing without prejudice plaintiff's claims asserting breaches of state standards of care); <u>Landis v. US Airways, Inc.</u>, 2008 U.S. Dist. LEXIS 21300, at *9 (W.D. Pa. Mar. 18, 2008) (noting that, though a plaintiff must "establish that her injuries were caused by a violation of a federal standard of care in the first instance," state law remedies in tort actions are not preempted by the FAA); <u>Levy v. Cont'l Airlines, Inc.</u>, 2007 U.S. Dist. LEXIS 73027, at *18 (E.D. Pa. Oct. 1, 2007) ("Although the FAA preempts state law standards of care, it does not preempt state law remedies, such as tort actions, for violations of standards of care established by the FAA."); <u>Allen v. Am. Airlines, Inc.</u>, 301 F. Supp. 2d 370, 374 (E.D. Pa. 2003) (noting that, because of the court's obligation to conform to dictates of the Third Circuit, plaintiff was required to "base his *negligence claim* upon a federal standard of care, *as prescribed within the FAA*") (emphasis added).

Hence, the court rejects plaintiffs' argument that a cause of action may be implied under the FAA.  The court further notes that an analysis of the factors originally outlined by the Supreme Court in <u>Cort v. Ash</u> supports the conclusion that no such right of action exists.  Those factors are as follows: (1) "whether the plaintiff is 'one of the class for whose especial benefit the statute was enacted[,]'" <u>Rauch</u>, 548 F.2d at 456 (quoting <u>Ash</u>, 422 U.S. at 78), (2) "whether there is any indication of congressional intent to create or deny a private remedy[,]" (<u>id.</u>), (3) "whether the implication of a private remedy is consistent with the underlying purpose of the legislative scheme[,]" (<u>id.</u>), and (4) "whether it would be inappropriate to infer a cause of action based solely on federal law[,] in that the

matter is one traditionally of state concern and the remedy ordinarily relegated to the states[.]" (Id.) The court will consider each relevant factor in turn.

First, there can be little doubt that plaintiff is a member of the class "for whose *especial* benefit the statute was enacted." Ash, 422 U.S. at 78. The FAA was passed with the purpose of creating "a Federal Aviation Agency for better handling of problems of air safety"—in essence, to prevent from happening the very type of accident which caused Mr. Pease's injuries in this case. Rauch, 548 F.2d at 457 (quoting 104 Cong. Rec. 17457 (1958) (remarks of Representative Flynt)). Indeed, Lycoming Engines seems to concede that Mr. Pease falls into this category. (See Doc. 92 at 13). Therefore, the court finds that the first factor weighs in favor of finding of an implied right of action.

Second, the court agrees with Lycoming Engines that the second factor—"whether there is any indication of congressional intent to create or deny a private remedy[,]" Ash, 422 U.S. at 78—weighs heavily against finding a federal private cause of action under the FAA. Congress declared the purpose of the Federal Aviation Act as follows:

> To continue the Civil Aeronautics Board as an agency of the United States, to create a Federal Aviation Agency, to provide for the regulation and promotion of civil aviation in such manner as to best foster its development and safety, and to provide for the safe and efficient use of the airspace by both civil and military aircraft, and for other purposes.[11]

---

[11] In 1966, the Federal Aviation Agency was renamed the Federal Agency Administration and placed within the Department of Transportation. See Department of Transportation Act, 89 Pub. L. No. 670, § 3(e)(1), 80 Stat. 931 (October 15, 1966).

Federal Aviation Act of 1958, 85 Pub. L. No. 726, 72 Stat. 731 (August 23, 1958).

As the Third Circuit noted in Abdullah v. American Airlines, Inc., "the legislative history of the FAA and its judicial interpretation indicate that Congress's intent was to federally regulate aviation safety[.]"  181 F.3d at 371.  Therefore, all state standards of care concerning aviation safety are preempted by federal law.  In Sikkelee v. Precision Airmotive Corp., the Honorable John E. Jones III concluded that the plaintiff's claims alleging a violation of a state-law standard of care must be dismissed.  713 F. Supp. 2d at 439.  As support, Judge Jones noted that the Abdullah court "affirmed that 'it is evident in both the savings and the insurance clauses of the FAA that Congress found state damage remedies to be compatible with federal aviation standards,' even if state *standards* are not likewise compatible."[12]  Id. at 436 (quoting Abdullah, 181 F.3d at 375) (internal citation omitted) (emphasis included).  In light of the above, we cannot avoid the conclusion that the second factor of the

---

[12] The savings clause of the FAA states: "A remedy under this part [49 USCS §§ 40101 et seq.] is in addition to any other remedies provided by law."  49 U.S.C. § 40120(c).  The insurance clause requires that an airline maintain a liability insurance policy or plan that is "sufficient to pay, not more than the amount of the insurance, for bodily injury to, or death of, an individual or for loss of, or damage to, property of others, resulting from the operation or maintenance of the aircraft . . . ." 49 U.S.C. § 41112(a).

<u>Cort</u> test is unsatisfied.[13]  It is therefore unnecessary to address the third or forth

part of the test.[14]

We agree with Lycoming Engines that no private cause of action exists under

the FAA, based upon an analysis of the <u>Cort v. Ash</u> test or relevant Third Circuit

caselaw, but we conclude that dismissal of the amended complaint would be

inappropriate.  Although inartfully constructed and phrased, the amended

complaint states claims sounding in products liability and negligence and violations

of federal standards of care.  In fact, this is the exact result that the parties sought,

in providing plaintiffs with an opportunity to file an amended complaint.  To

conclude otherwise would be unjust under the circumstances presented here,

where plaintiffs did not have the benefit of knowing the applicability of Tennessee

law when they filed the amended complaint.  Therefore, the court will deny the

motion to strike, or in the alternative, to dismiss plaintiffs' amended complaint.

---

[13] In <u>In re Aircrash Near Mexico City</u>, the Ninth Circuit reached the identical conclusion, and stated that the "second . . . part of the <u>Cort</u> test" is "arguably most significant part"  708 F.2d 400, 408 (9th Cir. 1983) (concluding "that the Federal Aviation Act does not contain an implied private right of action").

[14] <u>See</u> <u>California v. Sierra Club</u>, 451 U.S. 287, 298, 68 L. Ed. 2d 101, 101 S. Ct. 1775 (1981) (stating that the final two "factors are only of relevance if the first two factors give indication of congressional intent to create the remedy").

**IV.**     **Conclusion**

For the above-stated reasons, the court will deny the motion to strike, or in the alternative, dismiss the amended complaint (Doc. 47).  An appropriate order will follow.

                                          S/ Christopher C. Conner
                                          CHRISTOPHER C. CONNER
                                          United States District Judge

Dated:      August 22, 2011

**IN THE UNITED STATE S DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID H. PEASE, III and LISA** | : | **CIVIL ACTION NO. 4:10-CV-00843** |
| **PEASE,** | : | |
| | : | **(Judge Conner)** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LYCOMING ENGINES,** | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 22nd day of August, 2011, upon consideration of the motion (Doc. 47) to strike or, in the alternative, dismiss plaintiffs' claims, and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 47) is DENIED.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge