**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DAVID H. PEASE, III and LISA PEASE, | : | CIVIL ACTION NO. 4:10-CV-00843 |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiffs** | : | |
| | : | |
| v. | : | |
| | : | |
| LYCOMING ENGINES, | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Plaintiffs David H. Pease III ("Mr. Pease") and Lisa Pease ("Mrs. Pease") (collectively, "the Peases") bring this diversity action against defendant Lycoming Engines Inc. ("Lycoming"). Presently before this court are four motions *in limine*: (1) the Peases' motion (Doc. 99) to preclude evidence of Mr. Pease's expired medical certificate; (2) Lycoming's omnibus motion (Doc. 101); (3) the Peases' motion (Doc. 102) to preclude evidence pursuant to the collateral source rule; and (4) Lycoming's motion (Doc. 118) to preclude expert testimony on economic damages. For the reasons set forth below, the court will deny without prejudice the Peases' motion *in limine* (Doc. 99) to preclude evidence of Mr. Pease's expired medical certificate (Doc. 99), Lycoming's omnibus motion *in limine* (Doc. 101) and Lycoming's motion (Doc. 118) *in limine* to preclude expert testimony on economic damages and grant in part and deny in part the Peases' motion (Doc. 102) to preclude evidence pursuant to the collateral source rule.

I.   **Background**

On June 5, 2005, Mr. Pease was flying from Asheville, North Carolina, to Cincinnati, Ohio, in a Piper PA-32R-301T aircraft (the "Piper aircraft").  (Doc. 68 ¶ 1; Doc. 117 ¶ 1).  During this flight, Mr. Pease's aircraft experienced engine failure and crashed near Tazewell, Tennessee.  (Id.)  Mr. Pease suffered significant injuries as a result of the crash.  The instant litigation is a diversity jurisdiction products liability action concerning the Piper aircraft's six-cylinder turbocharged Lycoming TIO-540-AH1A engine (the "AH1A engine") designed and manufactured by Lycoming.  (Doc. 68 ¶¶ 4, 8; Doc. 117 ¶¶ 4, 8).

On April 20, 2007, the Peases filed suit against Lycoming and fourteen other defendants in the United States District Court for the Middle District of Alabama.  (Docs. 1-2).  On April 19, 2010, the United States District Court for the Middle District of Alabama granted the Peases' motion to transfer venue and transferred the action to the United States District Court for the Middle District of Pennsylvania.  (Doc. 11-3).  The matter was reassigned to the undersigned on December 22, 2010.  On December 29, 2010, the Peases filed an amended complaint against Lycoming.  (Doc. 46).  The parties filed four motions *in limine*.  (Docs. 99, 101, 102, 118).  Each motion is ripe for disposition.

II.   **Discussion**

   A.   **The Peases' Motion *In Limine* to Preclude Evidence of Mr. Pease's Expired Medical Certificate**

The Peases move to preclude evidence of Mr. Pease's expired medical certificate pursuant to Federal Rules of Evidence 401, 402, and 403.  The Federal Aviation Regulations ("FAR") require that pilots obtain a valid medical certificate as a prerequisite to flying.  (See 14 C.F.R. § 67).  In the instant case, Mr. Pease's medical certificate expired five days before his plane crash on June 5, 2005.  (See Doc. 100, at 1).  The Peases argue that Mr. Pease's expired medical certificate is not relevant, and that its admission would be unduly prejudicial.  (Id. at 5-9).  Lycoming contends that Mr. Pease's expired medical certificate is relevant to Mr. Pease's qualifications as a pilot.  (See Doc. 126, at 4).

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  FED. R. EVID. 401.  Only relevant evidence is admissible, and generally, all relevant evidence is admissible, unless another evidentiary rule or law provides otherwise.  See FED. R. EVID. 402; see also Daubert v. Merrell Dow Pharms., 509 U.S. 579, 587 (1993) (noting that the "[b]asic standard of relevance under Federal Rules of Evidence is liberal one.").  The court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of

3

undue delay, waste of time, or needless presentation of cumulative evidence."  Fed.

R. Evid. 403; see also Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 382

(2008); Coleman v. Home Depot Inc., 306 F.3d 1333, 1343-44 (3d Cir. 2002).  Thus, the

court must consider whether any of the dangers described in Rule 403 substantially

outweigh the probative value of Mr. Pease's expired medical certificate.

The Third Circuit has cautioned that the exclusion of potentially relevant

evidence pursuant to Rule 403 is an "extreme measure" at the pre-trial stage.

Hines v. Consol. Rail Corp., 926 F.2d 262, 274 (3d Cir. 1991).  Evidence should rarely

be excluded in limine pursuant to Rule 403 because "[a] court cannot fairly

ascertain the potential relevance of evidence for Rule 403 purposes until it has a full

record relevant to the putatively objectionable evidence."  In re Paoli R.R. Yard

PCB Litig., 916 F.2d 829, 859 (3d Cir. 1999).

The court finds that exclusion of Mr. Pease's expired medical certificate is

premature at this juncture.  At a minimum, Mr. Pease's expired medical certificate

would be relevant to rebut evidence or testimony that "Mr. Pease was a fully

qualified pilot on the day of the accident."  (Doc. 126, at 4).  The court cannot fairly

ascertain the potential relevance of Mr. Pease's expired medical certificate for Rule

403 purposes without the context of a "specific trial situation."  Am. Home Assur.

Co. v. Sunshine Supermarket, Inc., 753 F.2d 321, 324 (3d Cir. 1985).  Accordingly,

the court will deny the Peases' motion to preclude evidence of Mr. Pease's medical certificate without prejudice.[1]

### B.    Lycoming's Omnibus Motion *In Limine*

In its omnibus motion in *limine* (Doc. 101), Lycoming seeks to prevent admission of various service difficulty reports, airworthiness directives, and service bulletins proffered by the Peases pursuant to Rules 401, 402, 403, 404, 801, 802, and 805 of the Federal Rules of Evidence.  (See Doc. 119).  Lycoming asserts that this evidence is inadmissible on three primary grounds: (1) post-sale evidence is inadmissible under the Tennessee Products Liability Act of 1978 ("TPLA"); (2) the proffered evidence is irrelevant because it is not "substantially similar or casually related" to Mr. Pease's plane crash; and (3) the proffered evidence is inadmissible hearsay.  (Id.)  The court will address each argument *seriatim*.

### 1.    Admissibility of Post-Sale Evidence Under the TPLA

Lycoming contends that all post-sale evidence is inadmissible under the TPLA.[2]  Specifically, Lycoming argues that the relevant inquiry under the TPLA is whether the AH1A engine was either defective or unreasonably dangerous at the time it left Lycoming's control.  TENN. CODE ANN. § 29-28-105(a).

---

[1] The court recognizes that the introduction of Mr. Pease's expired medical certificate could unfairly prejudice the Peases.  Therefore, counsel for Lycoming shall refrain from mentioning Mr. Pease's expired medical certificate in opening statements or thereafter, unless the matter is properly addressed at side bar and the court deems such evidence admissible at that time.

[2] By memorandum and order dated March 11, 2011, the court concluded that Tennessee law applies to the Peases' claims.

The court rejects Lycoming's contention.  Tennessee courts have specifically stated that *post-sale* accidents are admissible in products liability cases "to show the dangerous nature of the product in question."[3]  <u>Flax v. DaimlerChrysler Corp.</u>, No. M2005–01768–COA–R3–CV, 2006 WL 3813655, at *17 (Tenn. Ct. App. Dec. 27, 2006) (citing <u>Winfre v. Coca–Cola Bottling Works</u>, 83 S.W.2d 903, 905 (1935)) <u>aff'g in part, rev'd in part by</u> <u>Flax v. DaimlerChrysler Corp.</u>, 272 S.W.3d 521, 543 (Tenn. 2008). Thus, clearly the TPLA does not preclude *all* post-sale evidence.  The court holds that under the TPLA post-sale evidence is admissible if it is relevant to prove the subject product was defective or unreasonably dangerous when it left the manufacturer's control or any other fact of consequence unless it is barred by another evidentiary rule or law.[4]

## 2.   <u>Relevance and Substantial Similarity</u>

Lycoming seeks to preclude, as irrelevant, the admission of service difficulty reports of other accidents involving TIO-540 series engines, airworthiness directives promulgated by the FAA, and service bulletins issued by Lycoming.  Specifically,

---

[3] Post-sale accidents are also generally admissible under the Federal Rules of Evidence.  <u>See</u>, <u>e.g.</u>, <u>Burke v. Deere & Co.</u>, 6 F.3d 497, 505 (8th Cir. 1993).

[4] The court agrees with Lycoming that post-sale evidence cannot be used to prove notice because Tennessee has not recognized post-sale failure to warn claims. <u>See</u> <u>Flax v. DaimlerChrysler Corp.</u>, 272 S.W.3d 521, 543 (Tenn. 2008).  The Peases have not argued, nor does the court predict that the Tennessee Supreme Court will recognize post-sale failure to warn claims in the foreseeable future.  <u>See</u> <u>Berrier v. Simplicity Mfg., Inc.</u>, 563 F.3d 38, 45 (3d Cir. 2009).

Lycoming argues that such evidence either pertains to different TIO-540 engines and/or involves different types of engine failure. (See Doc. 119, at 7-12, 14-16).

### a.    Service Difficulty Reports

The Peases seek to introduce eighty-two service difficulty reports describing "failures of components related to and located adjacent to the turbocharger" in other TIO-540 model engines to show Lycoming's knowledge of the alleged design defect. (See Doc. 134, at 9). The FAA collects service difficulty reports from the aviation community to "aid owners, operators, manufacturers, and the FAA in identifying problems encountered during aircraft service." Aerosource, Inc. v. Slater, 142 F.3d 572, 575 (3d Cir. 1998).

To establish that evidence of other accidents is relevant, the proponent has the burden of demonstrating "that the accidents occurred under circumstances substantially similar to those at issue in the case at bar." Barker v. Deere & Co., 60 F.3d 158, 162 (3d Cir. 1995); Duran v. Hyundai Motor Am., Inc., 271 S.W.3d 178, 198 (Tenn. Ct. App. 2008). The proponent must show that there is sufficient similarity between the other accident and the proponent's theory on how his or her accident occurred "so that the admission of the evidence will make the existence of any fact that is of consequence to the determination of the action more probable." Sweitzer v. Oxmaster, Inc., No. 09–CV-5606, 2011 WL 721907, *3 (E.D. Pa. Mar. 2, 2011) (citations and quotations omitted); see also Duran, 271 S.W.3d at 198. Mere allegations of similarity are insufficient, the proponent must appraise the court of the "specific facts" of the other accidents. Sweitzer, 2011 WL 721907, at *3. The

7

requisite similarity necessary to satisfy this foundational requirement depends on what the other accident is offered to prove.[5] Barker, 60 F.3d at 162 (noting that the substantial similarity requirement is "especially important" when offered to prove the existence of a design defect); Evans v. Pa. R.R. Co., 255 F.2d 205, 210 (3d Cir. 1958).

The court cannot determine the potential relevance of the service difficulty reports at this time. The relevance of each service difficulty report can only be determined by carefully examining the specific facts of each accident. Therefore, the court will conduct an evidentiary hearing to resolve this issue prior to trial. At the hearing, the Peases will have an opportunity to lay a proper foundation for each proffered service difficulty report and the court will determine whether the prior accidents occurred under circumstances substantially similar to those at issue in the above-captioned matter. See Barker, 60 F.3d at 163.

---

[5] The Peases cite a Tenth Circuit case—Black v. M & Gear Co., 269 F.3d 1220, 1226 (10th Cir. 2001)—for the proposition that the substantial similarity requirement does not apply to expert testimony. Black is inapplicable to the instant case because it interpreted an older version of Rule 703 of the Federal Rules of Evidence. Id. at 1228 n.3. The current version of Rule 703 permits an expert to disclose facts or data that would otherwise be inadmissible only "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. The court cannot assess the probative value of the service difficulty reports without examining whether the other accidents are sufficiently similar to the engine failure which led to Mr. Pease's plane crash.

## b.    Airworthiness Directives and Service Bulletins

The Peases proffer various airworthiness directives and services bulletins for three purposes: (1) to rebut that the AH1A engine is safe; (2) to demonstrate the feasibility of precautionary measures; and (3) to rebut that Lycoming acted with the imprimatur of the FAA.  (Doc. 134, at 20-25).  Airworthiness directives are legally enforceable rules promulgated by the FAA to correct unsafe conditions existing in an aircraft or aircraft component parts.  See 14 C.F.R. § 39.1; Melville v. Am. Home Assur. Co., 584 F.2d 1306, 1315 (3d Cir. 1978).  Similarly, service bulletins are issued by manufacturers to notify owners/mechanics of maintenance that must be performed to address reported post-sale equipment problems.  (See, e.g., Doc. 135, Ex. 10).

As an initial matter, the court must determine if airworthiness directives and service bulletins promulgated after the sale of the subject AH1A engine are precluded by Federal Rule of Evidence 407.  Rule 407 states, in pertinent part:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: . . .  a defect in a product or its design . . . .  But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

FED. R. EVID. 407.  Rule 407 is inapplicable to the proffered airworthiness directives because the directives were issued by the FAA and not Lycoming.  Furthermore, the advisory committees' notes to Rule 407 explicitly provide that [e]vidence of measures taken by the defendant prior to the 'event' causing 'injury or harm' do not

fall within the exclusionary scope of Rule 407 even if they occurred after the

manufacture or design of the product.[6]   See FED. R. EVID. 407 advisory committee's

notes (1997) (citing Chase v. Gen. Motors Corp., 856 F.2d 17, 21-22 (4th Cir. 1988)).

Therefore, Rule 407 does not prohibit the introduction of service bulletins issued by

Lycoming prior to Mr. Pease's accident.  Additionally, Rule 407 does not preclude

admission of service bulletins issued after Mr. Pease's plane crash if offered to

prove the feasibility of precautionary measures.  See FED. R. EVID. 407.

Consequently, the court must determine whether the airworthiness

directives and service bulletins promulgated after the sale of the subject AH1A

engine are relevant.  Lycoming asserts that the airworthiness directives and service

bulletins proffered by the Peases are irrelevant because they implicate different

TIO-540 engine models and defects unrelated to the purported cause of Mr. Pease's

plane crash.  (See Doc. 119, at 14).  The court cannot evaluate Lycoming's

contention without examining each proffered airworthiness directive and service

bulletin in the context of the purpose for which they are offered.  The court will

require that the Peases connect the proffered airworthiness directives and service

---

[6]  Prior to the 1997 amendments to Rule 407, some courts interpreted Rule 407 to preclude evidence of remedial service bulletins issued after the manufacture of the subject product.  See, e.g., Farley v. Cessna Aircraft Co., No. 93-CV-6948, 1996 WL 37823, at *5 (E.D. Pa. 1996) (excluding all evidence of the defendant's service bulletins issued after the manufacture of the subject product).  The advisory committee's notes explicitly state that words "'an injury or harm allegedly caused by' were added to clarify that the rule applies only to changes made after the occurrence that produced the damages giving rise to the action." FED. R. EVID. 407 advisory committee's notes (1997).

bulletins to their theory of liability in the case *sub judice*.  Thus, the Peases will have to demonstrate that the airworthiness directives and service bulletins involve substantially similar circumstances and that the evidence is otherwise relevant for its proffered purpose.  For these reasons, the court will defer ruling on the admissibility of the proffered airworthiness directives and service bulletins until the evidentiary hearing conducted prior to trial.

### 3.   Hearsay

Lycoming asserts that the service difficulty reports proffered by the Peases should be excluded as inadmissible hearsay.  (Doc. 119, at 12).  Specifically, Lycoming argues that the service difficulty reports "constitute hearsay within hearsay because the author cannot be cross examined about his or her entry."  (Id. at 14).

Federal Rule of Evidence 801 defines hearsay as a "statement other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  FED. R. EVID. 801(c).  Hearsay is inadmissible unless an exception enumerated in the Federal Rules of Evidence applies.  Agere Sys., Inc. v. Advanced Envtl. Tecg. Corp., 602 F.3d 204, 232 (3d Cir. 2010).  In order for hearsay within hearsay to be admissible, each part of the combined statement must conform with an exception to the hearsay rules.  FED. R. EVID. 805.

The Peases ostensibly concede that the service difficulty reports constitute hearsay if offered for the truth of the matter asserted.  The Peases contend,

however, that the service difficulty reports are nevertheless admissible for two reasons.  First, the Peases argue that the service difficulty reports are admissible for a non-hearsay purpose, to show that Lycoming had notice of the AH1A engine's defective design.  It is well-established that evidence of other accidents may be offered for the non-hearsay purpose of proving that a manufacturer had notice of the defective condition of its product.  Pa. Trust Co. v. Dorel Juvenile Grp., Inc., No. 07–CV-4029, 2011 WL 3740472, at *12 (E.D. Pa. Aug. 25, 2011) (noting that evidence of prior accidents is admissible to show that the defendant had notice of the danger); AMERICAN LAW OF PRODUCTS LIABILITY 3D. § 54:24.  Therefore, the service difficulty reports will not excluded as hearsay if offered to prove notice.

Second, the Peases assert that their experts—Colin Sommer and Douglas Herlihy—may testify regarding the service difficulty reports even if the reports constitute hearsay.  (Doc. 134, at 5-9).  Federal Rule of Evidence 703 makes clear that the facts or data underlying the expert's opinion need not be admissible for the opinion to be admitted "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."  FED. R. EVID. 703.  Rule 703 further states that if the facts or data are otherwise inadmissible, "the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Id.  The court cannot properly evaluate the probative value of the evidence without the context of a "specific trial situation."  Am. Home Assur. Co., 753 F.2d at

324.[7]  Therefore, the court will deny Lycoming's omnibus motion *in limine* (Doc.

101) without prejudice and address the remaining issues at an evidentiary hearing

conducted prior to trial, and if necessary at trial.

**C.**  **The Peases' Motion *In Limine* to Preclude Evidence Pursuant to the Collateral Source Rule**

Next, the Peases move to preclude evidence of their financial status, that Mr.

Pease receives social security disability benefits, and that Mr. Pease's medical

insurance allowed him to pay his medical bills at a discounted rate.  (Doc. 102).

Under Tennessee law, "the fact that the plaintiff has received payments from a

collateral source, other than the defendant, is not admissible in evidence and does

not reduce or mitigate the defendant's liability."  Donnell v. Donnell, 415 S.W.2d

127, 134 (1967).

Lycoming concedes that Tennessee's collateral source rule bars it from

referencing Mr. Pease's social security disability benefits and medical insurance

coverage.  (Doc. 125, at 3-4).  As Lycoming agrees not to present evidence on Mr.

---

[7]  The Peases contend that Federal Rule of Evidence 705 permits disclosure of otherwise inadmissible evidence for the purpose of illustrating the basis of the expert's opinion.  (Doc. 134, at 5).  The Peases cite case-law that predates recent amendments to the Federal Rules of Evidence.  In 2000, Rule 703 was amended to "emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted."  Fed. R. Evid. 703 advisory committee's notes (2000).  Rule 705 simply permits an expert to state an opinion without first testifying to the underlying facts or data and allows the *adverse* party to disclose those facts or data on cross-examination.  Fed. R. Evid. 705; see also Fed. R. Evid. 703 advisory committee's notes.

Pease's social security disability benefits and medical insurance coverage at trial, the court will grant this part of the Peases' motion *in limine*.

Lycoming contends, however, that the Peases have put their financial status at issue by seeking to recover economic damages. (Id. at 4-6). In general, it is prejudicial error to allow into evidence the wealth of a litigant "except where position or wealth is necessarily involved in determining the damages sustained." Union Elec. Light & Power Co. v. Snyder Estate Co., et al., 65 F.2d 297, 303 (8th Cir. 1933). In the instant case, Peases intend to introduce evidence of Mr. Pease's pre-accident earnings to establish economic damages. (See Doc. 57, Ex. B, at 1). Therefore, Lycoming may reference the Peases' financial status for the limited purpose of rebutting the Peases' claims for economic damages. Accordingly, the court will deny without prejudice the Peases' motion to preclude evidence pursuant to the collateral source rule, to the extent that it seeks to preclude challenges to their claims for economic damages.[8]

## D.   **Lycoming's Motion *In Limine* to Exclude Expert Testimony Concerning Damages**

Lycoming seeks to preclude expert testimony from a number of the Peases' economic experts pursuant to Rules 702, 703, and 705 of the Federal Rules of Evidence. Admissibility of expert testimony is a question of law governed by the

---

[8] The parties are directed to meet and confer on the appropriate method for Lycoming to challenge the Peases' economic damages claims without improperly referencing collateral source payments currently received by the Peases or their wealth generally.

Federal Rules of Evidence.  See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579,

588-89 (1993).  The trial judge acts as a "gatekeeper" and determines the

admissibility of expert testimony.  See Calhoun v. Yamaha Motor Corp., U.S.A., 350

F.3d 316, 321 (3d Cir. 2003).  Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a
> witness qualified as an expert by knowledge, skill, experience, training,
> or education, may testify thereto in the form of an opinion or otherwise,
> if (1) the testimony is based upon sufficient facts or data, (2) the testimony
> is the product of reliable principles and methods, and (3) the witness has
> applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702; see also Calhoun, 350 F.3d at 321 (explaining that the Rule 702

requirements constitute "the 'trilogy of restrictions on expert testimony:

qualification, reliability and fit'" (quoting Schneider v. Fried, 320 F.3d 396, 405 (3d

Cir. 2003)).  Nonetheless, Rule 702 embraces a "liberal policy of admissibility,"

under which it is preferable to admit any evidence that may assist the trier of fact.

Pineda v. Ford Motor Co., 520 F.3d 237, 243 (3d Cir. 2008) (quoting Kannankeril v.

Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997)).

    In the instant case, Lycoming argues that the following economic damages

experts should be excluded: (1) David Gibson ("Gibson") and Dr. Ronald Missun

("Dr. Missun");[9] (2) Laura Lampton, R.N. ("Lampton"); (3) Dr. Erin D. Bigler ("Dr.

Bigler"); and (4) Mr. Pease's treating physicians.  The court will first address

Lycoming's contention that the experts' opinions are based on materials that were

---

[9] Gibson and Dr. Missun co-authored an expert report.  (See Doc. 57, Ex. B,
at 1).

never produced in discovery and then address the admissibility of each expert's

testimony.

### 1.   <u>Failure to Produce Discovery Materials</u>

Lycoming contends that the Peases have not produced materials relevant to

their claims and relied on by their experts including some of Mr. Pease's medical

records after 2005, tax returns from the late nineties and other financial documents.

(<u>See</u> Doc. 132, at 1, 3, 8, 10).  Lycoming argues that Gibson's, Dr. Missuin's,

Lampton's, and Mr. Pease's treating physicians' expert testimony should be

excluded because their opinions are based on this information.  The Peases respond

that Lycoming never requested their experts' files and that they sent all the

information to Lycoming on April 18, 2011.  (Doc. 141, at 4).

### a.   <u>Violation of Rules 26(a)(1)(ii) and 26(e)</u>

Federal Rule of Civil Procedure 26(a)(1)(ii) provides:

> a party must, without awaiting a discovery request, provide to the
> other parties: (ii) a copy--or a description by category and location--of
> all documents, electronically stored information, and tangible things
> that the disclosing party has in its possession, custody, or control and
> may use to support its claims or defenses, unless the use would be
> solely for impeachment.

FED. R. EVID. 26(a)(1)(ii).  Rule 26(e) further states:

> (1) In General. A party who has made a disclosure under Rule 26(a)--or
> who has responded to an interrogatory, request for production, or
> request for admission--must supplement or correct its disclosure or
> response: (A) in a timely manner if the party learns that in some
> material respect the disclosure or response is incomplete or incorrect,
> and if the additional or corrective information has not otherwise been

made known to the other parties during the discovery process or in writing; or (B) as ordered by the court.

FED. R. EVID. 26(e).  In the case *sub judice,* fact discovery closed on July 6, 2010, and the Peases' expert reports were due on or before November 9, 2010.  (See Doc. 33, 38).  The Peases clearly had copies of Mr. Pease's medical records and financial documents in their control because their experts relied on this information to prepare their expert reports filed on or before November 9, 2010.  (Doc. 38).  In addition, these materials encompass the mandatory disclosure requirements of Rule 26(a)(1)(ii) and Rule 26(e) because they may be used to support the Peases' claims for economic damages.[10]  Specifically, Mr. Pease's medical records may be necessary to prove his injuries and his tax returns and other financial documents may be necessary to prove his lost earning capacity.[11]  Therefore, the Peases had an obligation to supplement their initial disclosures and provide a copy or a description by category and location of the undisclosed medical records and financial information to Lycoming in a timely manner.[12]  The Peases have presented no evidence that they provided a copy or a description by category and

_____

[10]  The court notes that the Peases explicitly state in their brief that they eventually produced these materials pursuant to Rule 26(e).

[11]  To be clear, Mr. Pease's undisclosed medical records and financial documents, even if they had not been used by the Peases' damages expert, would have had to be disclosed pursuant to Rule 26(a)(1)(ii) and Rule 26(e).

[12]  The Peases' damages experts did list the "undisclosed" information in their expert reports.  This is not technical compliance with Rule 26(a)(1)(ii) because the lists do not include a description by category and location of the documents.

location of Mr. Pease's undisclosed medical records or financial documents prior to April 18, 2011.  (Doc. 141, at 4).

The court concludes that the Peases' disclosures of the undisclosed materials pursuant to Rule 26(e) on April 18, 2011, were untimely.  Rule 26(a)(1)(ii) specifically states that a party must provide the covered materials "without awaiting a discovery request."  The court recognizes that Rule 26(e) does not require parties to take immediate action when they discover new information and that supplemental disclosures can be made "at appropriate intervals during the discovery period." FED. R. EVID. 26(e) advisory committee's notes (1993).  However, the Peases did not supplement their disclosures prior the close discovery, the deadline for Lycoming's expert reports, or the deadline for filing motions *in limine*.  (See Doc. 33).  For these reasons, the court holds that Peases violated Rule 26(a)(1)(ii) and Rule 26(e).

### b.    Appropriate Sanction

Rule 37(c)(1) of the Federal Rules of Civil Procedure states that a party who fails to comply with Rule 26(a)'s requirements is "not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1). The non-producing party has the "burden of proving substantial justification or that its failure to produce was harmless."  Tolerico v. Home Depot, 205 F.R.D. 169, 175 (M.D. Pa. 2002).  Substantial justification for the failure to make a required disclosure has been regarded as "justification to a degree that could satisfy a

reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." United States v. Dentsply Intern., Inc., No. Civ. A. 99-5, 2000 WL 654378, *7 (D. Del. May 10, 2000).  Failure to comply with Rule 26(a) is harmless "if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been produced." Klatch-Maynard v. Sugarloaf Tp., No. 3:06-CV-0845, 2011 WL 2006424, at *2 (M.D. Pa. May 23, 2011).  The Peases have not presented any evidence or argument on these issues.

Nonetheless, the Third Circuit has held that "even under Rule 37, the imposition of sanctions for abuse of discovery . . . is a matter within the discretion of the trial court." Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 156 (3d Cir. 1995) (citations and quotations omitted).  The Third Court instructs district courts to consider the following factors in exercising its discretion to exclude expert testimony: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court; (4) bad faith or willfulness in failing to comply with the district court's order" and (5) the importance of the excluded testimony. Klatch-Maynard, 2011 WL 2006424, at *3 (citing Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 904–05 (3d Cir. 1977), overruled on other grounds, Goodman v. Lukens Steel Co., 777 F.2d 113 (3d Cir. 1985)).  The Third Circuit has also cautioned that

excluding evidence is an "extreme sanction" for a violation of a discovery order.  In re TMI Litig., 193 F.3d 613, 721 (3d Cir. 1999) (citation and quotations omitted).

Application of the Meyers factors to facts of the instant case demonstrates that exclusion is not an appropriate sanction.[13]  Lycoming suffered only nominal prejudice.  Lycoming knew that the Peases' had updated medical records and other financial documents in their possession from the Peases' expert reports.  Lycoming easily could have requested production of these documents from the Peases at anytime.[14]  In addition, the prejudice to Lycoming is ameliorated because a firm trial date has not been set in this matter.  Ciocca v. BJ.'s Wholesale Club, Inc., No. 04–CV-5605, 2011 WL 3563560, at *3 (E.D. Pa. Aug. 12, 2011) (noting that when "courts exclude expert testimony on grounds of untimeliness, it is almost always in the face of a fast approaching trial date.").  Moreover, the court finds no evidence that the Peases acted in bad-faith or willfully. Rather, the record suggests that the Peases believed that they did not have to produce these materials at an earlier time because Lycoming neither requested them nor deposed their damages experts. (Doc. 141, at 4).  Finally, curative steps will alleviate any potential prejudice to Lycoming.  The court will permit Lycoming to depose any of the Peases' damages

---

[13]  The court finds that application of the Meyers factors also demonstrates that no other sanction is necessary or justified under the unique circumstances of this case.

[14]  Lycoming has also had the documents in its possession for approximately nine months because the Peases sent their experts' files to Lycoming on April 18, 2011.

experts within thirty days (30) days of entry of this order.  Furthermore, Lycoming

may file expert reports on economic damages within sixty (60) days of entry of this

order.[15]  The court finds that a minor delay in the trial date is far outweighed by the

interest of the jury deciding the case on the basis of a "complete evidentiary

record."[16]  Nippo Corp./Intern. Bridge Corp. v. AMEC Earth & Envtl., Inc., No.

09–CV–0956, 2011 WL 1196922, at *6 (E.D. Pa., Mar. 30, 2011).  Accordingly, the

court will permit the Peases' experts to testify regarding these materials.

### 2.    Admissibility of Gibson's and Dr. Missuin's Expert Testimony

Lycoming asserts that the court should exclude the expert testimony of

David Gibson and Dr. Ronald Missun.  Gibson and Dr. Missun conducted a

vocational economic assessment to measure Mr. Pease's lost earning capacity.[17]

Under Tennessee law, loss of earning capacity is determined "by comparing what

the person would have been capable of earning but for the injury with what the

person is capable of earning after the injury."  Overstreet v. Shoney's, Inc., 4 S.W.3d

694, 703 (Tenn. Ct. App. 1999) (citations omitted).  A number of factors are relevant

to this inquiry including the person's age, health, intelligence, capacity and ability

---

[15] The court will address the issue of supplemental expert reports if Lycoming chooses to file expert reports on economic damages.

[16] Lycoming may file a motion with the court within fourteen (14) days of entry of this memorandum and order if it believes that further curative steps are necessary to cure any remaining prejudice.

[17] "A vocational economic assessment is forecast of future expected earnings" (Doc. 57, Ex. B, at 5).

to work, experience, training, record of employment, and future avenues of employment. Id. at 704. Some imprecision in the proof concerning impairment of lost earning capacity is not grounds for excluding the evidence. Id. ("The proof concerning impairment of earning capacity is, to some extent, speculative and imprecise." (citations omitted)).

In the instant case, Gibson's and Dr. Missun's projected Mr. Pease's loss earnings to range from $7,102,253.00 to $7,439,56.00.[18] (Doc. 57, Ex. B, at 1). Lycoming asserts that Gibson and Dr. Missun have disregarded relevant data and "cherry-picked" favorable facts. Specifically, Lycoming argues that Gibson's and Dr. Missun's vocational economic assessments do not include Mr. Pease's average earnings after the year 2000. Lycoming notes that Mr. Pease continued to earn significant income in the five years preceding the accident and the two years subsequent to the accident which were not included in Gibson's and Missun's assessment. (Doc. 132, at 8). A review of Gibson's and Missun's expert report demonstrates that they reviewed all available information concerning Mr. Pease's earning capacity. (See Doc. 57, Ex. B). Gibson and Missun excluded Mr. Pease's

---

[18] Gibson and Dr. Missun performed two vocational economic analyses. In the first, they found Mr. Pease's pre-injury earning power to be reasonably represented by his earnings from 1995 to 2000. (Doc. 57, Ex. B, at 3). Mr. Pease served as the president of Pease Industries from 1995 until he sold Pease Industries in 1999. (Id.) In 1999 and 2000, Mr. Pease worked as a consultant for Pease Industries. (Id.; Doc. 142, Ex. 1 ¶ 5). To ensure that Mr. Pease's earnings were not impacted by the sale of Pease Industries in 1999, Gibson and Missun performed a second vocational economic analysis based on Mr. Pease's average earnings from 1995 to 1998. (Doc. 57, Ex. B, at 3).

earning from 2000 to 2003 because Mr. Pease's employment activities were constrained by a non-compete agreement.  (See id. at 3; Doc. 142, Ex. 1 ¶ 4). Similarly, Gibson and Missun excluded Mr. Pease's 2004 and 2005 earnings because Mr. Pease had started three nascent business entities and relevant financial information was obviously quite limited.  (Doc. 57, Ex. B, at 3; Doc. 142, Ex. 1 ¶ 5). In addition, the vast majority of the income listed in Mr. Pease's tax returns from 2000 until 2007 derived from "passive" sources and therefore was not relevant to determining Mr. Pease's earning capacity.  (See Doc. 142, Ex. 1 ¶ 6; see also Doc. 57, Ex. 1, at 9-10 (defining earning capacity)); Stewart v. Prechutko, No. 86-246-II, 1987 WL 19307, at *2 (Tenn. Ct. App. Nov. 4, 1987) (holding that passive income is not relevant to determining impairment of earning capacity).

Lycoming also argues that Gibson and Missun incorrectly calculated Mr. Pease's lost earning capacity based on lost business profits.  Profits received from investments or derived solely from ownership of a business are not properly considered when determining impairment of earning capacity.  See Stewart, 1987 WL 19307, at *2.  In other words, lost business profits are not admissible to prove impairment of earning capacity where the profits "depend for the most part upon the employment of capital, the labor of others, or similar variable factors."  King v. Gen. Motors Corp., No. M2004-00616-COA-R3-CV, 2005 WL 3508016, at *3 (Tenn. Ct. App. 2005) (quoting Dingus v. Cain, 406 S.W.2d 169, 170-71 (Tenn. Ct. App. 1966)). Lost profits are recoverable where "the injured person's services rather than the capital invested or labor of others is the predominate factor in producing the

profits" and the proof is "devoid of any element of speculation." <u>King</u>, 2005 WL

3508016, at *3 (citations and quotations omitted).  In the instant case, Gibson and

Dr. Missun used Mr. Pease's Social Security earning statement and tax returns to

determine Mr. Pease's earnings from 1995 and 2000.  (Doc. 57, Ex. B, at 2-3; Doc.

142, Ex. 1 ¶ 3).  Mr. Pease's Social Security Statement reflected his wages as

reported by employers in Box 3 of Mr. Pease's W-2 form and/or amounts he self-

reported on Schedule SE of his tax returns.  (Doc. 142, Ex. 1 ¶ 7).  It is not entirely

clear from the record whether this information includes business profits from Pease

Industries or only Mr. Pease's salary.[19]  The court will defer ruling on this aspect of

Gibson's and Missun's expert testimony pending expert depositions in accordance

with the reviewed pretrial schedule set forth herein.

### 2.    <u>Admissibility of Lampton's Expert Testimony</u>

Lycoming contends that the court should preclude the expert testimony of

Laura Lampton, R.N., a Life Care Plan Specialist with Vocational Economics, Inc.

(<u>See</u> Doc. 132, at 9-11).  Lampton prepared a life care plan for Mr. Pease that

projected Mr. Pease's future medical and life care expenses to range from

$2,582,820.00 to $2,698,249.00 (Doc. 57, Ex. C).  The purpose of a life care plan is to

identify "long-term cares needs for a person with a catastrophic injury or disability.

---

[19]  Gibson averred, however, that the earnings reported on Mr. Pease's social
security statement excluded the sale of Pease Industries.  (Doc. 142, Ex. 1 ¶ 8).
Furthermore, Gibson and Dr. Missun also analyzed Mr. Pease's loss earning
capacity from 1995 to 1998 to ensure that the sale did not impact their findings.
(Doc. 57, Ex. B, at 3).

. . [and] the best method for meeting those needs." (Doc. 142, Ex. 1 ¶ 3). Lycoming argues that Lampton's life care plan is unreliable because it contains unreasonable and unsupported assumptions concerning Mr. Pease's propspective care and expenses.

The court finds that Lampton's testimony is reliable and well-supported. Lampton's report details Mr. Pease's current level of physical and cognitive function and identifies how his present condition creates special medical, equipment, and service needs. Lampton stated in her report that she acquired pertinent information regarding's Mr. Peases current level of physical and cognitive functioning, his special needs, and the costs of meeting those needs by interviewing the Peases, Mr. Pease's doctors and therapists, and various other individuals, and by reviewing Mr. Pease's medical records. (See Doc. 57, Ex. 2). Furthermore, Lampton's expert report specifically identifies the records she reviewed and the various individuals she contacted for information. (See id. at 2). The court finds that Lampton employed a reliable, reasoned approach to creating a life care plan and that her expert testimony easily meets the liberal standard of reliability under Daubert. See Daubert v. Merrell Dow Pharms., 509 U.S. 579, 587 (1993) (holding that the "basic standard of relevance [as contained in the Federal Rules of Evidence] . . . is a liberal one.").

Lycoming argues that Norman v. City of Lorain, Ohio, No. 04–CV–913, 2006 WL 5249724 (N.D. Ohio Nov. 27, 2006) is analogous to this case and supports exclusion of Lampton's life care plan. The Norman court found the plaintiff's life

25

care plan to be irrelevant and unreliable because it failed "to differentiate between Plaintiff's injury allegedly caused by Defendant, and Plaintiff's other medical limitations." Id. at *7.  In sharp contrast, Lampton's life care plan focuses exclusively on Mr. Pease's injuries from his plane crash on June 5, 2005.  The report carefully describes Mr. Peases' numerous injuries and his current physical and cognitive condition to explain the basis for Mr. Pease's special medical, equipment, and service needs.  (See Doc. 57, Ex. 2).  Accordingly, the court will permit Lampton's expert testimony subject to the Peases laying appropriate foundation to qualify Lampton as an expert at trial.

### 3.     Admissibility of Dr. Bigler's Expert Testimony

Lycoming asserts that the expert report submitted by the Peases' neuropsychology expert, Dr. Erin D. Bigler, should be precluded because it is irrelevant and unreliable.  (Doc. 132, at 12).  Specifically, Lycoming argues that Dr. Bigler's report does not reflect Mr. Pease's current neuropsychological condition because the report states that "the test data included in this report should be considered outdated after six months."  (Doc. 57, Ex. D., at 1; Doc. 132, at 12).  The Peases counter that the language referenced by Lycoming is "part of the standard format used by the Utah Valley Regional Medical Center" and that Dr. Bigler properly opined on Mr. Pease's future prognosis because his injury had plateaued. (Doc. 141, at 13-15).

Dr. Bigler evaluated Mr. Pease on January 6, 2009, approximately three and half years after his plane crash.  (Doc. 142, Ex. 3 ¶ 3).  Dr. Bigler avers that an abundance of medical literature demonstrates that neuropsychological deficits stabilize approximately 18 months after an injury and therefore he "would not expect any major changes or improvement in Mr. Pease given the severity of the injury" and the timing of his examination.  (Id. ¶ 5).  Dr. Bigler further states in his affidavit that magnetic resonance imaging of Mr. Pease's brain objectively demonstrates the stability of his injuries.[20]  (Id. ¶ 7).

In light of the above, the court simply cannot exclude Dr. Bigler's opinion based upon a single line representing the rote language of a standard form. Lycoming will have ample opportunity to challenge the "outdated" nature of his data and the validity of Dr. Bigler's conclusions through cross-examination. Accordingly, the court will permit Dr. Bigler's expert testimony.

### 4.   <u>**Admissibility of Expert Testimony from Treating Physicians**</u>

Lycoming contends that the Peases should be precluded from introducing expert testimony from his treating physicians because the Peases never disclosed any of Mr. Pease's treating physicians as experts pursuant to Federal Rule of Civil Procedure 26(a)(2).  (Doc. 132, at 13-15).  The Peases contend that Lycoming's

---

[20]  The court holds that Dr. Bigler's affidavit is an appropriate elaboration to his expert report because it merely explains the continued relevance of his opinion. Furthermore, Lycoming will have an opportunity to question Dr. Bigler on this issue prior to trial by deposing him within thirty (30) days of entry of this memorandum and order.

motion is moot because it has no intention of eliciting expert testimony from Mr. Pease's treating physicians and they disclosed Mr. Pease's treatng physicians as fact witnesses pursuant to Federal Rule of Civil Procedure 26(a)(1).  (Doc. 19, at 15). Lycoming's motion raises two distinct issues: (1) whether the nature of Mr. Pease's treating physicians' proposed testimony is "expert" or "factual" in nature; and (2) if the Peases failed to comply with Rule 26(a)(2), whether precluding the treating physicians' expert testimony is an appropriate sanction.

### a.    Expert Testimony v. Factual Testimony

Rule 26(a)(2) requires litigants to disclose the identity of any individual who may provide expert testimony pursuant to Federal Rules of Evidence 702, 703, or 705.  See FED. R. CIV. P. 26(a)(2)(A).  Witnesses "retained or specially employed to provide expert testimony" or "whose duties as the party's employee regularly involve giving expert testimony" must also provide a written expert report.  FED. R. CIV. P. 26(a)(2)(B).  All other experts must disclose the subject matter of their expert testimony and a summary of the facts and opinions to which they expect to testify. FED. R. CIV. P. 26(a)(2)(C).

The Federal Rules of Evidence do not distinguish between lay and expert witnesses, but "rather between expert and lay testimony."  FED. R. EVID 701 advisory committee's notes (2000).  It is clear that in the Third Circuit treating physicians may testify as lay witnesses regarding diagnosis and treatment under

some circumstances.[21]  See Allen v. Parkland Sch. Dist., 230 Fed. App'x 189, 194 (3d

Cir. 2007); Collins v. Prudential Inv. and Ret. Svcs., 119 Fed. App'x 371, 379 (3d Cir.

2005); Haines v. Davies, No. 1:07-CV-00851, 2009 WL 331433, at *3 (M.D. Pa. 2009).

However, in the case *sub judice*, the Peases state that they "may call the disclosed

treating physicians to testify to Mr. Pease's diagnoses and *prognosis*, as well as

*causation*." (Doc. 141, at 18 (emphasis added)).  The court finds that the treating

physicians' testimony on prognosis and causation will inherently be based on

scientific, technical, or other specialized knowledge within the scope of Rule 702.

Upchurch v. Hester, No. 05-CV-252, 2006 WL 3020772, at *2 (D. Del. Oct. 23, 2006);

Garza v. Roger Henson Trucking, L.L.C., No. 7:05-CV-5001, 2006 WL 1134911, *3 (D.

Neb. Apr. 26, 2006) (noting that "expert testimony includes opinions based on

scientific, technical, or other specialized knowledge, regardless of whether those

opinions were formed during the scope of interaction with a party prior to the

litigation." (internal quotations and citation omitted)).  Therefore, the Peases were

required to disclose Mr. Pease's treating physicians as expert witnesses pursuant to

Rule 26(A)(2)(A).

---

[21]  The court cannot conclusively determine that Mr. Pease's treating
physicians intend only to offer lay testimony on Mr. Pease's diagnosis or treatment.
The advisory notes to Federal Rule 701 make evident that a "witness' testimony
must be scrutinized under the rules regulating expert opinion to the extent that the
witness is providing testimony based on scientific, technical, or other specialized
knowledge within the scope of Rule 702." FED. R. EVID. 701, advisory committee's
notes (2000).  Hence to the extent necessary, the court will determine whether Mr.
Pease's treating physicians are offering expert testimony at trial.

Next, the court must determine whether Mr. Pease's treating physicians were required to prepare written expert reports pursuant to Rule 26(A)(2)(B).  In the Third Circuit, treating physicians are generally not required to submit expert reports when testifying "based on their examination, diagnosis and treatment of a patient." Mracek v. Bryn Mawr Hosp., 610 F. Supp. 2d 401, 406 (E.D. Pa. 2009) (citation omitted); see also FED. R. CIV. P. 26 advisory committee's notes (1993) ("A treating physician . . . can be deposed or called to testify at trial without any requirement for a written report").  Nonetheless, some district courts have required treating physicians to provide expert reports if they plan to testify on prognosis or causation. See, e.g., Patterson v. Howard, No. 06-CV-4334, 2010 WL 1050052,  at *4 (D.N.J. Mar. 18, 2010); Upchurch, 2006 WL 3020772, at *2.  The court finds these cases unpersuasive.  The plain language of Rule 26(a)(2)(A) explicitly limits the expert report requirement to individuals "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." FED. R. CIV. P. 26(a)(2)(B).  A treating physician is not necessarily retained or specially employed to provide expert testimony simply because he or she proffers on causation and prognosis.  This conclusion is bolstered "by the obvious fact that doctors may need to determine the cause of an injury in order to treat it." Fielden v. CSX Transp., Inc., 482 F.3d 866, 870 (6th Cir. 2007); see also Piper v. Harnischfeger Corp., 170 F.R.D. 173, 174 (D. Nev. 1997) ("It is common place for a treating physician during, and as part of, the course of treatment of a patient to consider things such as the cause of the medical condition, the diagnosis,

the prognosis and the extent of disability caused by the condition, if any."). To

determine whether a party retained or specially employed a treating physician to

provide expert testimony, the relevant inquiry is "whether the treating physician

acquired his opinion as to the cause of the plaintiff's injuries directly through his

treatment of the plaintiff." Lauria v. Nat'l R.R. Passenger Corp., No. 95-CV-1561,

1997 WL 138906, at *2 (E.D. Pa. 1997) (citation omitted); see also Fielden v. CSX

Transp., Inc., 482 F.3d 866, 869-70 (6th Cir. 2007).  Thus, the court holds that

treating physicians are not subject to the reporting requirements of Rule 26(a)(2)(B)

if they form their opinion on causation or prognosis as part of the ordinary care of a

patient.[22]

   In the instant case, the Peases aver that Mr. Pease's treating physicians will

testify based only on their personal knowledge acquired through their treatment of

---

[22] The Third Circuit has not resolved this issue in a precedential opinion.  In Allen v. Parkland School Dist., 230 Fed. App'x 189 (3d Cir. 2007), the Third Circuit held in a non-precedential opinion that the district court did not abuse its discretion by excluding the treating physician's causation testimony "based on facts that went beyond his treatment" of the plaintiff.  Allen, 230 Fed. App'x at 194.  The Third Circuit panel's decision in Allen is entirely consistent with this court's holding.  An opinion is necessarily not formed as part of the ordinary care of the patient if it is based on facts learned outside of the treatment of the patient.

Mr. Pease.  (Doc. 141, at 15, 18).  Therefore, Mr. Pease's treating physicians were not required to prepare expert reports pursuant to Rule 26(a)(2)(B).[23]

### B.   Appropriate Sanction

The Peases were required to disclose all expert witnesses pursuant to Rule 26(a)(2) on or before November 9, 2010.  (Doc. 38).  As explained above, the court finds that Mr. Pease's treating physicians had to be disclosed as experts pursuant to Rule 26(a)(2), but that the treating physicians were not required to produce expert reports.  It is undisputed that to date the Peases have not disclosed Mr. Pease's treating physicians' as expert witnesses.  (Doc. 141, at 15).  Therefore, the Peases failed to comply with Rule 26(a)(2) and the court must determine whether the treating physicians' testimony should be barred pursuant to Rule 37(c)(1).

Application of the Meyers factors establishes that exclusion of the treating physicians' expert testimony is not an appropriate sanction.  Lycoming is not significantly prejudiced because the Peases disclosed all of Mr. Pease's treating physicians as potential fact witnesses.  Any potential prejudice may be cured by requiring the Peases to disclose Mr. Pease's treating physicians as experts.  The court will order that the Peases provide to Lycoming within fourteen days (14) of entry of this memorandum and order, the subject matter of the treating physician's

---

[23]   The court will allow Lycoming to explore how Mr. Pease's treating physicians formed their opinions outside of the presence of the jury prior to permitting their expert testimony.  The court will exclude the treating physicians' expert testimony on causation and prognosis to the extent the treating physicians formed their opinions at the request of the Peases' counsel and not as part of Mr. Pease's ordinary care and treatment.

expert testimony and a summary of the facts and opinions to which the witnesses

are expected to testify pursuant to Rule 26(a)(2)(C).  The court will also permit

Lycoming to request additional medical records from Mr. Pease's treating

physicians and depose them within thirty (30) days of entry of this memorandum

and order.[24]  Subject to these conditions, the court concludes that admission of the

treating physicians' testimony will not disrupt the orderly and efficient trial of the

case or other cases before the court.  The court also concludes that there is no

evidence in the record that the Peases violated the court's order in "bad faith" or

"willfully." Rather, the Peases' brief in opposition to Lycoming's motion

demonstrates that they conflated the issue of whether treating physicians must

provide an expert report pursuant Rule 26)(a)(2)(B) with the requirement of a

disclosing an expert pursuant to Rule 26(a)(2)(A).  For these reasons, the court will

not exclude expert testimony from Mr. Pease's treating physicians.

---

[24]  Again, Lycoming may file a motion with the court within fourteen (14) days
of entry of this memorandum and order if it believes that further curative steps are
necessary to cure any remaining prejudice.

**III.**   <u>**Conclusion**</u>

For the reasons set forth above, the court will deny without prejudice the Peases' motion *in limine* (Doc. 99) to preclude evidence of Mr. Pease's expired medical certificate (Doc. 99), Lycoming's omnibus motion *in limine* (Doc. 101) and Lycoming's motion (Doc. 118) *in limine* to preclude expert testimony on economic damages without prejudice.  The court will grant in part and deny in part the Peases' motion *in limine* (Doc. 102) to preclude evidence pursuant to the collateral source rule (Doc. 102).  The court will address the unresolved issues at an evidentiary hearing conducted prior to trial.

An appropriate order follows.

<u> S/ Christopher C. Conner  </u>
CHRISTOPHER C. CONNER
United States District Judge


Dated:        January 19, 2012

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID H. PEASE, III and LISA PEASE,** | : | **CIVIL ACTION NO. 4:10-CV-00843** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LYCOMING ENGINES,** | : | |
| | : | |
| **Defendant** | : | |

## <u>ORDER</u>

AND NOW, this 19th day of January, 2012, upon consideration of the Peases'
motion *in limine* (Doc. 99) to preclude evidence of Mr. Pease's expired medical
certificate; Lycoming's omnibus motion *in limine* (Doc. 101); the Peases' motion *in
limine* (Doc. 102) to preclude evidence pursuant to the collateral source rule; and
Lycoming's motion (Doc. 118) to preclude expert testimony on economic damages,
and for the reasons stated in the accompanying memorandum, it is hereby
ORDERED:

1.  The Peases' motion *in limine* (Docs. 99) to preclude evidence of Mr.
    Pease's expired medical certificate is DENIED without prejduice;

2.  Lycoming's omnibus motion *in limine* (Doc. 101) is DENIED without
    prejudice.

3.  The Peases' motion *in limine* (Doc. 102) to preclude evidence pursuant
    to the collateral source rule is GRANTED in part and DENIED in part,
    as follows:

    a.  The motion is GRANTED with respect to precluding Lycoming
        from referencing Mr. Pease's social security disability benefits
        and medical insurance coverage.

     b.    The motion is DENIED with respect to precluding Lycoming from referencing the Peases' financial status for the limited purpose of rebutting the Peases' claims for economic damages.

4.    Lycoming's motion *in limine* (Doc. 118) to preclude expert testimony on economic damages is DENIED without prejudice.

5.    Counsel for Lycoming shall refrain from mentioning Mr. Pease's expired medical certificate in opening statements or thereafter, unless the matter is properly addressed at side bar and the court deems such evidence admissible at that time.

6.    The parties are directed to meet and confer on the appropriate method for Lycoming to challenge the Peases' economic damages claims without improperly referencing collateral source payments currently received by the Peases or their wealth generally.

7.    Lycoming may depose any of the Peases' damages experts within thirty (30) days of entry of this order.

8.    Lycoming may file expert reports on economic damages within sixty (60) days of entry of this order.

9.    The Peases shall provide the subject matter of Mr. Pease's treating physician's testimony and a summary of the facts and opinions to which the witnesses are expected to testify to Lycoming pursuant to Rule 26(a)(2)(C) within fourteen (14) days of entry of this order.

10.    Lycoming may depose Mr. Peases' treating physicians within thirty (30) days of entry of this order.

11.    Lycoming may file a motion with the court within fourteen (14) days of entry of this memorandum and order if it believes that further curative steps are necessary to cure any remaining prejudice.

                                        _S/ Christopher C. Conner_
                                        CHRISTOPHER C. CONNER
                                        United States District Judge